346 S.E.2d 356

**PRIDE, INC.**

**v.**

**STATE ex rel. STATE OF WEST VIRGINIA HUMAN RIGHTS COMMISSION and Joan Montgomery.**

**No. 16876.**

Supreme Court of Appeals of West Virginia.

July 11, 1986.

---

Charlie Brown, Atty. Gen., Emily Spieler, Asst. Atty. Gen., Charleston, for appellants.

Douglas Witten, Avis, Witten & Wandling, Logan, for appellee.

PER CURIAM:

The West Virginia Human Rights Commission (Commission) and Joan Montgomery appeal from a final order of the Circuit Court of Logan County, dated December 3, 1984, reversing the Commission's order, dated December 9, 1981, which found that Pride, Inc. had unlawfully discriminated against Ms. Montgomery, a black woman, by refusing to rehire her because of her race. We agree with the Circuit Court's conclusion that the Commission's decision was clearly wrong, and we therefore affirm.

I

The complainant, Joan Montgomery, began working in 1971 as an outreach counselor in the family planning program of Pride, Inc. (Pride), a non-profit social service organization. In August of 1974, six workers, including Montgomery, lost their jobs in the family planning program because the project was not refunded. Four of the six were transferred to other programs. Montgomery and a white woman, Margaret Messer, were not transferred. At the time of the terminations, Pride officials told Montgomery and Messer that they would be considered for future job openings without having to submit written applications.

About two months later, Messer was rehired to fill a vacancy as an outreach worker in the Aging Program. She was rehired the day after personally meeting with Roscoe Thornbury, Pride's executive director, to tell him she desperately needed a job.

When Messer was rehired, the complainant was unavailable for employment because she had given birth to a son on September 27, 1974. Her doctor released her for work on November 10, 1974.

During the following year, Montgomery frequently visited the Pride offices to let the administrators know that she needed and was available for work. Other workers informed her periodically of vacant positions. In October of 1975, Messer was promoted to a position in the Head Start program, leaving her former job vacant. Messer told Montgomery about the availability of this position. Upon making several inquiries she was told that there was

no vacancy. On November 3, 1975, Pride hired Melinda Cline, a white woman, to fill the position left vacant by the promotion of Messer. Cline resigned after working for a few days.

Montgomery then submitted a written application for the position of outreach worker in the Aging program. She also filed a complaint with the Human Rights Commission, thus instituting the action that has culminated in the instant appeal. In December of 1975, Pride hired Dawn Clancy, a black woman, to fill the vacancy.

The record shows that Montgomery worked sporadically for other employers during 1975 and 1976. In August of 1976, she began working steadily again at a rate of pay comparable to what she earned while working for Pride, Inc.

Following a hearing on Montgomery's complaint in June of 1980, the Commission found that Pride, Inc. had unlawfully discriminated against Montgomery by failing to hire her because of her race. The Commission's order awarded Montgomery back pay in the amount of $6,760 for lost wages from the date she was first available for work following her termination, November 10, 1974, until she began to earn wages comparable to what she earned while employed at Pride, Inc., in August of 1976. In calculating the back pay award, the commission allowed an offset for wages earned during the period covered by the back pay award.

On Pride's appeal, the Circuit Court of Logan County reversed on the grounds that a *prima facie* case of unlawful discrimination had not been established, the Commission's decision was an abuse of discretion and that it was clearly wrong in view of the reliable, probative and substantial evidence on the whole record.

## II

The evidentiary standards applicable in a case based on unlawfully discriminatory hiring practices were established in syllabus point 3 of *Shepherdstown Volunteer Fire Department v. State ex rel. State Human Rights Commission*, 172 W.Va. 627, 309 W.Va. 342 (1983):

In an action to redress unlawful discriminatory practices in employment and access to 'place[s] of public accommodations' under The West Virginia Human Rights Act, *as amended, W.Va.Code*, 5–11–1 *et seq.*, the burden is upon the complainant to prove by a preponderance of the evidence a prima facie case of discrimination, which burden may be carried by showing (1) that the complainant belongs to a protected group under the statute; (2) that he or she applied and was qualified for the position or opening; (3) that he or she was rejected despite his or her qualifications; and (4) that after the rejection, the respondent continued to accept the applications of similarly qualified persons. If the complainant is successful in creating this rebuttable presumption of discrimination, the burden then shifts to the respondent to offer some legitimate and nondiscriminatory reason for the rejection. Should the respondent succeed in rebutting the presumption of discrimination, then the complainant has the opportunity to prove by a preponderance of the evidence that the reasons offered by the respondent were merely a pretext for the unlawful discrimination.

The *Shepherdstown* standards were derived from *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Although *Shepherdstown* had not been decided at the time of the Commission's ruling in the instant case, the Commission properly and perceptively utilized the United States Supreme Court's formulation of a *prima facie* case of employment discrimination as enunciated in *McDonnell Douglas*.

The Commission found that complainant Montgomery established a *prima facie* case of unlawful discrimination and that the employer did not have a legitimate nondiscriminatory reason for not hiring the complainant.

One flaw in the Commission's final order is its lack of specificity. The order states, in a conclusory fashion, that a *prima facie* case of race discrimination

was established. However, there was no evidence from which the Commission could reasonably infer that Pride, Inc. rejected the complainant's application for employment between November 10, 1974, the date on which the complainant was first available for rehiring following her termination, and November 3, 1975, the date on which Melinda Cline was hired. Rejection of the complainant is an essential feature of the *prima facie* case of unlawful discrimination. *Shepherdstown Volunteer Fire Department v. State ex rel. State Human Rights Commission, supra.* The failure to make an adequate showing of rejection defeats the complainant's case. Therefore, the Commission was clearly wrong in determining that a *prima facie* case of discrimination prior to November 3, 1975, was established.

■ The Commission properly found the establishment of a *prima facie* case at the time Pride hired Melinda Cline. Although Pride contends that the complainant did not apply for the vacancy filled by Cline, and was therefore not rejected, the evidence supports the Commission's finding that the complainant was rejected in the sense that Pride's administrators knew of her availability and interest but failed to consider her candidacy for the position.

■ The reason given by Pride for not hiring the complainant to fill the vacancy resulting from Messer's promotion was that the complainant had not filed a written application as she had been instructed to do. The employer "bears only the burden of explaining clearly the nondiscriminatory reasons for its actions." *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 260, 101 S.Ct. 1089, 1097, 67 L.Ed.2d 207, 219 (1981), *cited in State ex rel. West Virginia Human Rights Commission v. Logan-Mingo Area Mental Health Agency,* 174 W.Va. 711, 329 S.E.2d 77, 86 (1985). *See also Shepherdstown Volunteer Fire Department v. State ex rel. State Human Rights Commission, supra,* 172 W.Va. 637, 309 S.E.2d at 352. In this case, the employer met its burden, and the Commission was clearly wrong in concluding otherwise.

Because in the Commission's view the employer had no legitimate nondiscriminatory reason for not hiring the complainant, there was no need for the Commission to determine whether such a reason was a pretext. Thus the circuit court had no findings to review with respect to the question of pretext. However, the court reviewed the record and found that the complainant was rejected for employment because she lacked the sensitivity to work in the Aging program and did not meet the financial need eligibility requirements prescribed by federal regulations governing the funding of Pride's programs.

On reviewing the record, we find that the evidence does not support the court's findings relating to Pride's reasons for not rehiring the complainant. Testimony given by Roscoe Thornbury concerning the complainant's sensitivity and financial need was abstract and hypothetical. Mr. Thornbury did not testify directly about the reasons why the complainant was not rehired except to say that others who applied for jobs were better qualified than the complainant. Earl Jarvis, director of the Head Start and Aging programs, testified that each time the complainant expressed interest in a job, he told her to file a written application but that she did not do so, to his knowledge, until after Cline was hired. Consequently, the complainant was not considered for the position subsequently filled by Cline. The sole reason offered for not hiring the complainant at that time was her failure to file an application.[*]

■ Disparate treatment is probative of pretext. *State ex rel. State Human Rights Commission v. Logan-Mingo Area Mental Health Agency, supra,* 174 W.Va. 721, 329 S.E.2d at 87. The alleged disparate treatment is that a discharged black

---

[*] After the complainant filed a written application, and the position was vacated, the complainant was considered along with another black woman, Dawn Clancy. Clancy was hired, according to Jarvis, because she held a degree from a community college and because the complainant lacked the necessary sensitivity to work with senior citizens. We note that the complainant does not contend that the hiring of Clancy constituted unlawful discrimination.

employee was required to submit a written application in order to be considered for rehiring while a discharged white employee was not subject to the same requirement. However, in the unrefuted testimony of Earl Jarvis, the difference in treatment was explained by the fact that the complainant had been separated from employment with Pride for more than a year. We conclude that the complainant has failed to prove by a preponderance of the evidence that the reason given by the employer for not rehiring her, in November of 1975, was a pretext for illegal discrimination.

For the foregoing reasons, the final order of the Circuit Court of Logan County, reversing the decision of the West Virginia Human Rights Commission, is affirmed.

Affirmed.

McGRAW, J., dissents and would reverse the order of the Circuit Court of Logan County and affirm the decision of the West Virginia Human Rights Commission.