460 S.E.2d 484

194 W.Va. 349

**Roseanna McCAULEY, Plaintiff Below, Appellant,**

v.

**MERRIMAC, INC., dba McDonald's; and J.W. Ebert Corporation, dba McDonald's, Defendants Below, Appellees.**

**No. 22501.**

Supreme Court of Appeals of West Virginia.

Submitted May 9, 1995.

Decided July 14, 1995.

Regina L. Charon, Morgantown, for appellant.

James A. Varner, Catherine D. Munster, McNeer, Highland & McMunn, Clarksburg, for Merrimac, Inc.

C. David Morrison, Carolyn A. Wade, Steptoe & Johnson, Clarksburg, for J.W. Ebert Corp.

PER CURIAM:

This appeal is before this Court from the final order of the Circuit Court of Harrison County, West Virginia, entered on December 3, 1993. Pursuant to that order, the circuit court entered summary judgment in favor of Merrimac, Inc. and the J.W. Ebert Corporation in an action filed by the appellant, Roseanna McCauley, for age discrimination in employment under The West Virginia Human Rights Act, *W.Va.Code*, 5–11–1, *et seq.* This Court has before it all matters of record and the briefs and argument of counsel. For the reasons set forth below, the final order of the Circuit Court of Harrison County is affirmed, in part, and reversed, in part, and this case is remanded to the Circuit Court of Harrison County for further proceedings consistent with this opinion.

I

Merrimac, Inc. (hereinafter "Merrimac") was the owner of various McDonald's Corporation restaurant franchises and operated McDonald's restaurants in Bridgeport, Clarksburg and Buckhannon, West Virginia. The appellant was employed by Merrimac from August, 1973 until July 16, 1990. During her employment, the appellant completed two McDonald's Corporation training programs and, in 1977, became the manager of Merrimac's Clarksburg restaurant. Although the appellant had no written contract with Merrimac defining her job duties, the record indicates that her performance as a manager in Clarksburg was excellent. In December, 1988, the appellant was transferred to Merrimac's Bridgeport restaurant and became the manager of that restaurant. The appellant was over the age of forty at the time of the transfer.

According to Merrimac, the performance ratings of the Bridgeport McDonald's declined under the appellant's management, and, in 1990, Merrimac made a decision to sell the Bridgeport franchise to the J.W. Ebert Corporation (hereinafter "Ebert"). In June, 1990, the appellant was called to the office of Allan McLaughlin, an owner/executive of Merrimac, and informed of the sale. McLaughlin told the appellant that John

Ebert, the buyer, would become the manager of the Bridgeport restaurant on July 16, 1990. That date, McLaughlin indicated, would be the appellant's last day of employment. When asked by the appellant about positions at the Clarksburg or Buckhannon restaurants, McLaughlin stated that there were no openings for her at those locations. McLaughlin told the appellant that she could contact Ebert concerning employment.

At the time of the sale, the appellant was the only person over the age of forty managing any of Merrimac's restaurants. Shortly before the sale, McLaughlin met with the remaining employees at the Bridgeport location, en masse, and told them that they would be retained by Ebert. Those employees were under the age of forty and were, in fact, retained by Ebert, with John Ebert as restaurant manager. The appellant was the only Merrimac employee who lost employment. She never requested employment from Ebert.

Significantly, at the time of the sale, neither the restaurant operated by Merrimac in Clarksburg nor the one in Buckhannon had permanent managers. Both of those restaurants were being operated by acting managers, under the age of forty, who had not completed the McDonald's Corporation training programs. Shortly after the sale, and upon completion of the training programs, the acting managers at the Clarksburg and Buckhannon restaurants were made permanent managers by Merrimac.

The appellant emphasizes that, although Merrimac had no policy or contract requiring that she be transferred to the Clarksburg or Buckhannon restaurants, transfers from one Merrimac restaurant to another were common, and the appellant herself had been transferred from the Clarksburg restaurant to the Bridgeport restaurant in 1988. Moreover, the appellant asserts that in early 1990 McLaughlin promised her long-term employment with Merrimac. The appellant further asserts, however, that Merrimac employed few managers over the age of forty and that Merrimac had terminated the employment of some of those managers. Information concerning the number of such managers and

the reasons for the alleged terminations is not clear in the record before this Court.

Based upon the above circumstances, the appellant contends that Merrimac and Ebert transgressed the provisions of The West Virginia Human Rights Act, *W.Va.Code*, 5–11–1, *et seq.* Upon her administrative complaint for age discrimination, the West Virginia Human Rights Commission, in 1991, issued to the appellant a notice of right to institute an action in circuit court. *W.Va.Code*, 5–11–13(b) [1983]. Thereafter, the appellant filed an action for age discrimination in the Circuit Court of Harrison County against McDonald's Corporation, Merrimac and Ebert.

The circuit court dismissed McDonald's Corporation from the action, and the appellant does not appeal that ruling. However, as reflected in the final order entered on December 3, 1993, the circuit court, in addition, entered summary judgment in favor of Merrimac and Ebert. Specifically, the circuit court concluded that the appellant failed to establish a *prima facie* case against either Merrimac or Ebert because, as the circuit court found, neither Merrimac nor Ebert had made an adverse decision concerning the appellant, based upon her age.

In so ruling, the circuit court determined that, at the time of the sale, Merrimac, in effect, terminated the employment of all of the Bridgeport restaurant employees, including the appellant, and, inasmuch as those employees were under the age of forty, Merrimac did not discriminate against the appellant. Moreover, the circuit court determined that the appellant's action against Ebert must fail because the appellant never requested employment from Ebert.

## II

Pursuant to The West Virginia Human Rights Act, equal opportunity for employment without regard to age has been defined as a protected human right or civil right. As the declaration of public policy set forth in the Act states: "Equal opportunity in the areas of employment and public accommodations is hereby declared to be a human right or civil right of all persons without regard to race, religion, color, national origin, ancestry,

sex, age, blindness or handicap." *W.Va. Code,* 5–11–2 [1989].

The term "age" is defined in the Act to be the age of forty or above. *W.Va.Code,* 5–11–3. Moreover, during the period in question, *W.Va.Code,* 5–11–9(a)(1) [1989], recent amendments to which are not relevant to this action, provided: "It shall be an unlawful discriminatory practice, unless based upon a bona fide occupational qualification ... [f]or any employer to discriminate against an individual with respect to compensation, hire, tenure, terms, conditions or privileges of employment if the individual is able and competent to perform the services required[.]"

The issue before this Court, however, is a narrow one, namely, whether the Circuit Court of Harrison County committed error in concluding that the appellant failed to establish a *prima facie* case against Merrimac and Ebert, based upon age discrimination.

■ In *Conaway v. Eastern Associated Coal Corp.,* 178 W.Va. 164, 358 S.E.2d 423 (1986), relied upon by the circuit court and the parties in this action, this Court upheld a summary judgment entered against a plaintiff in an age discrimination case. The plaintiff in *Conaway* had an unsatisfactory employment record and failed to establish a nexus between his discharge and his age. In *Conaway,* this Court developed a test for determining whether a *prima facie* case for impermissible employment discrimination has been made. As syllabus point 3 states:

> In order to make a prima facie case of employment discrimination under the West Virginia Human Rights Act, W.Va.Code 5–11–1 *et seq.* (1979), the plaintiff must offer proof of the following:
> (1) That the plaintiff is a member of a protected class.
> (2) That the employer made an adverse decision concerning the plaintiff.
> (3) But for the plaintiff's protected status, the adverse decision would not have been made.

In discussing the three-part test, this Court noted in the *Conaway* opinion:

> The first two parts of the test are easy, but the third will cause controversy. Because discrimination is essentially an ele-

ment of the mind, there will probably be very little direct proof available. Direct proof, however, is not required. What is required of the plaintiff is to show some evidence which would sufficiently link the employer's decision and the plaintiff's status as a member of a protected class so as to give rise to an inference that the employment decision was based on an illegal discriminatory criterion. This evidence could, for example, come in the form of an admission by the employer, a case of unequal or disparate treatment between members of the protected class and others by the elimination of the apparent legitimate reasons for the decision, or statistics in a large operation which show that members of the protected class received substantially worse treatment than others.

178 W.Va. at 170–71, 358 S.E.2d at 429–30.

The test reflected in syllabus point 3 of *Conaway* has been utilized often by this Court. *See* syl. pt. 2, *Dawson v. Allstate Insurance Company,* 189 W.Va. 557, 433 S.E.2d 268 (1993); syl. pt. 2, *Raber v. Eastern Associated Coal,* 188 W.Va. 288, 423 S.E.2d 897 (1992); syl. pt. 1, *Dobson v. Eastern Associated Coal,* 188 W.Va. 17, 422 S.E.2d 494 (1992); syl. pt. 1, *Romney Housing Authority v. Human Rights Commission,* 185 W.Va. 208, 406 S.E.2d 434 (1991); syl. pt. 2, *Holbrook v. Poole Associates,* 184 W.Va. 428, 400 S.E.2d 863 (1990); syl. pt. 2, *O'Dell v. Jennmar Corporation,* 184 W.Va. 280, 400 S.E.2d 288 (1990); syl. pt. 1, *Shell v. Metropolitan Life Insurance,* 183 W.Va. 407, 396 S.E.2d 174 (1990).

■ In the recent case of *Barefoot v. Sundale Nursing Home,* 193 W.Va. 475, 457 S.E.2d 152 (1995), this Court determined that a plaintiff made a *prima facie* case of discriminatory discharge where evidence was offered that the employer may have discharged the plaintiff because she was a Native American and may have treated other employees, who were not in the plaintiff's protected class, less severely. In *Barefoot,* we discussed the third part of the *Conaway* test concerning the establishment of a *prima facie* case under The West Virginia Human Rights Act. Syllabus point 2 of *Barefoot*

holds: "The 'but for' test of discriminatory motive in *Conaway v. Eastern Associated Coal Corp.,* 178 W.Va. 164, 358 S.E.2d 423 (1986), is merely a threshold inquiry, requiring only that a plaintiff show an inference of discrimination."

■ In the action before this Court, the appellant instituted an action for age discrimination in employment and, as to her claim against Merrimac, offered evidence that she is over the age of forty, had provided competent and loyal service to Merrimac for many years and lost her employment with Merrimac at the time of the sale to Ebert. As to the latter point, the appellant asserts that (1) in view of Merrimac's past practice of transferring employees, she could have been transferred to the Clarksburg restaurant or the Buckhannon restaurant, (2) assistant managers under the age of forty were promoted to managers at both of those locations shortly after the sale, and (3) Merrimac employed few managers over the age of forty and terminated the employment of some of those managers. In particular, the evidence is somewhat uncertain as to the reason for the appellant's loss of employment with Merrimac. McLaughlin indicated that he simply could not transfer the appellant "without letting someone else go," and yet also indicated that the appellant's job performance at the Bridgeport restaurant was poor, and that was the reason for the sale to Ebert.

Holding that the plaintiff established a *prima facie* case of gender discrimination under The West Virginia Human Rights Act, this Court, in *Dawson, supra,* reversed a summary judgment entered on behalf of the employer. Similarly, in *Raber, supra,* this Court reversed a summary judgment entered on behalf of the employer, where the plaintiff established a *prima facie* case of age discrimination under The West Virginia Human Rights Act.

■ In this action, the record demonstrates that the appellant has established an inference of discrimination by Merrimac, *see Barefoot, supra,* and should be given the opportunity to more fully develop her case. While it is not clear whether the circumstances described herein will enable the appellant to prevail at trial, the circuit court was incorrect in concluding that the appellant did not establish a *prima facie* case. Therefore, the circuit court committed error in entering summary judgment in favor of Merrimac. As this Court held in syllabus point 3 of *Aetna Casualty and Surety Co. v. Federal Insurance Co.,* 148 W.Va. 160, 133 S.E.2d 770 (1963): "A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." *See also Cronin v. Aetna Life Insurance Co.,* 46 F.3d 196, 203–04 (2nd Cir.1995), and *Chambers v. TRM Copy Centers,* 43 F.3d 29, 37 (2nd Cir.1994) (showing plaintiff must make as to *prima facie* case to defeat summary judgment in an employment discrimination claim is *de minimis*).

■ As to Ebert, however, the facts are undisputed and very different. The appellant could not have retained her position as manager of the Bridgeport restaurant after the July 16, 1990, sale to Ebert because John Ebert, as a first-time franchise owner, was required by McDonald's Corporation policy to personally manage the restaurant, at least for some period of time. Moreover, the appellant never requested employment from Ebert.

In particular, although the appellant indicated that she felt McLaughlin's suggestion that she "apply" for employment with Ebert to be unfair, the record demonstrates that the appellant never sought out John Ebert, or called him, or sent a letter concerning employment. Later, in September, 1990, when the appellant did speak with John Ebert, she discussed her administrative complaint for discrimination with him and expressly told him that she was not interested in employment at the Bridgeport restaurant.

As the appellant's deposition states:

Q. So let me do it this way. You made the conscious choice on your own not to apply for employment with Mr. Ebert's company, right?

A. Yes.

Q. That was your decision and you made it, right?

A. Yes.

The circuit court made the following finding of fact with regard to the appellant's claim against Ebert: "McCauley never applied for employment with Ebert, nor were there any impediments to her ability to apply with Ebert. Further, in her only conversation with Ebert after his purchase of the Bridgeport store, McCauley told Ebert that she was not interested in working for him." After a careful examination of the record, this Court is of the opinion that the circuit court was correct in entering summary judgment for Ebert. *Pride, Inc. v. Human Rights Commission,* 176 W.Va. 565, 346 S.E.2d 356 (1986).

Accordingly, upon all of the above, this Court reverses the circuit court's entry of summary judgment on behalf of Merrimac. However, the entry of summary judgment on behalf of Ebert is affirmed. This action is remanded to the Circuit Court of Harrison County for further proceedings consistent with this opinion.

Affirmed, in part; reversed, in part, and remanded.

BROTHERTON and RECHT, JJ., did not participate.

FOX, J., and MILLER, Retired J., sitting by temporary assignment.