358 S.E.2d 423

**Dorwin CONAWAY**

v.

**EASTERN ASSOCIATED COAL CORPORATION.**

**No. 16969.**

Supreme Court of Appeals of West Virginia.

Dec. 9, 1986.

Dissenting Opinion June 8, 1987.

Franklin D. Cleckley, Morgantown, Gregory T. Hinton, Fairmont, for appellant.

Roger A. Wolfe, Charleston, James B. Stoneking, Morgantown, for appellee.

BROTHERTON, Justice:

This is an appeal from a summary judgment granted in favor of the appellee, Eastern Associated Coal Corporation, and against the appellant, Dorwin Conaway, by the Circuit Court of Monongalia County, West Virginia. Mr. Conaway, a former employee of Eastern, charged his former employer with age discrimination, wrongful discharge, and breach of contract. We agree with the trial court's action, and affirm.

Mr. Conaway was first employed by Eastern as a utility man in March, 1968, and became a foreman in 1969. In December, 1971, Conaway voluntarily resigned his position with Eastern and accepted a similar position with another company. However, he later returned to work for Eastern in September, 1972, as a section foreman in the Federal No. 2 Mine near Fairview, West Virginia. With the exception of a twenty-one month lay-off as a result of a back injury, Conaway continued to work for Eastern until his discharge in October, 1980.

Mr. Conaway was not a model employee. On numerous occasions noted in the record, Conaway was issued verbal or written notices for safety-related violations or refusing to obey orders from management. In his performance reviews, Conaway was given an overall acceptable rating, but the reports showed several shortcomings. He received an unacceptable rating for obeying safety regulations on a January 22, 1980, review. As to his work initiative, the report noted: "Feels that other should take care of needs he is responsible for. Tries to talk the work done instead of doing. If more time was spent doing instead of talk, would accomplish goals." As to his knowledge of the UMWA contract and company policy, the review noted that Conaway "tries to BS his way instead of using facts." Additionally, the review noted: "Conaway is an older, more experienced foreman. He feels he can get by on his BS instead of his actual performance. Need work in this area." Still, despite his shortcomings, in January Eastern felt Conaway was enough of an asset to keep him as an employee.

Later, an incident occurred which prompted Conaway's dismissal. At approximately 7:45 a.m. on Saturday, October 18, 1980, Conaway reported for work at the Federal No. 2 Mine. Conaway expected that he would be required to "fire boss," since a notice of this duty had been posted on the mine bulletin board on Thursday or Friday of that week. Fire bossing involves checking the mine for safety violations and monitoring methane gas levels in the mine. It is mandated by both Federal and State law.

Upon his arrival at the mine, Conaway was instructed orally by Charles Buchanan, the general assistant mine foreman, to oversee the work of a two-man track bolting crew. Conaway accompanied the track bolting crew into the mine. Later that morning, Bernard Stump, another mine foreman, advised Conaway that he was to fire boss the mine. Conaway refused.

Eastern asserts that Mr. Stump returned and delivered an unsigned note to Conaway which indicated that Conaway was to fire boss. This is disputed by Conaway, who claims never to have seen a note. When the shift ended, Mr. Buchanan gave Conaway a written note indicating that he had failed to obey an order. He was then given a formal notice of discharge and was told to report to the senior mine accountant.

Conaway appealed his discharge to the Eastern management personnel pursuant to the company labor policy governing the discipline of salaried employees. It was the consensus of the management, however, that, based upon Conaway's prior record and the October 18, 1980, incident, the discharge was proper.

In December, 1980, Conaway filed a discrimination complaint with the West Virginia Human Rights Commission against Eastern, charging age discrimination. On January 18, 1982, the West Virginia Human Rights Commission issued a probable cause determination against Eastern for age discrimination, and on March 31, 1983, the West Virginia Human Rights Commission issued Conaway a notice of a right to

sue. Conaway then filed suit in the Circuit Court of Monongalia County, West Virginia, in June, 1983, alleging in an amended complaint four causes of action: (1) that he was discharged so as to prevent him from becoming eligible for benefits under Eastern's long-term disability benefits program; (2) that he was discharged in order to prevent his pension rights from vesting; (3) that his discharge was in violation of his employment contract with Eastern; and (4) that he was discriminated against because of his age.

## I. Long-term Disability Benefits

■ Mr. Conaway claims that he was fired so that he would not become eligible for long-term disability benefits. This cause of action is basically one of wrongful discharge. Wrongful discharge is a tort action. *See Harless v. First Nat'l Bank,* 162 W.Va. 116, 124–25, 246 S.E.2d 270, 275 n. 5 (1978). The respondent contends, because Mr. Conaway waited over two years to file suit, this cause is barred because of the two-year statute of limitations in W.Va. Code § 55–2–12 (1981).

■ Mr. Conaway claims that the statute of limitations for this action should be tolled because his age discrimination action was pending before the Human Rights Commission. We disagree. A statute of limitations commences to run when the right to sue accrues. *See* syl. pt. 1, *Jones v. Trustees of Bethany College,* 177 W.Va. 168, 351 S.E.2d 183 (1986); *Sansom v. Sansom,* 148 W.Va. 603, 607, 137 S.E.2d 1, 4 (1964). With respect to the age discrimination claim alone, that cause of action did not accrue until March 31, 1983, when the West Virginia Human Rights Commission issued Mr. Conaway a notice of right to sue. All other causes of action accrued October 31, 1980, when Mr. Conaway's discharge was confirmed by the management at Eastern. The fact that Mr. Conaway's age discrimination claim was tolled during the period which he was proceeding before the Human Rights Commission does not

act to toll the statute of limitations from running on his other causes of action.

## II. Pension Benefits

■ Mr. Conaway further asserts that he was dismissed so his pension rights would not vest, in violation of the public policy of the State of West Virginia. This area is preempted by Federal ERISA law, *see* 29 U.S.C. § 1001 *et seq.* (1982), and such action is illegal under 29 U.S.C. § 1140 (1982).[1]

■ Mr. Conaway, however, presented no evidence whatsoever to support this allegation. To successfully defend against a motion for summary judgment, the plaintiff must make some showing of fact which would support a prima facie case for his claim. *See* W.Va.R.Civ.P. 56(c). Mr. Conaway fails in this. Therefore, we hold that the trial court correctly dismissed this cause of action.

## III. Contract

■ Mr. Conaway also argues that his employment was not "at will," but was governed by a contract. In syllabus point 6 of *Cook v. Heck's, Inc.,* 176 W.Va. 368, 342 S.E.2d 453 (1986), we held that an employee handbook may form the basis for a unilateral contract. This rule has some application in this case. Although Mr. Conaway was not covered under the formal National Bituminous Coal Wage Agreement of 1978 because he was a foreman, he was covered by a statement of general policies which applied to all salaried employees.

This document, however, merely set out an appeal procedure for discharged employees:

*Discharge: Discharge, for employees coming under this policy, must first be reviewed by the Industrial Relations Department and approved by the Vice President in charge of the department involved. Employees should be suspended pending this review period.*

[1]. The statute of limitations for this action is three years, see 29 U.S.C. § 1113 (1982), and

therefore this action is not time barred.

Discharge for such employees should be carefully considered by all concerned and such action taken only as a final recourse.

(Emphasis in original.) Mr. Conaway was given his appeal and he lost. The labor policy did not guarantee an outcome, just an appeal. Therefore, even if the labor policy is construed as a contract, Mr. Conaway alleged no facts which would show a violation of it.

### IV. Age Discrimination

The only cause of action left is Mr. Conaway's claim that he was discriminated against because of his age, in violation of W.Va.Code § 5–11–9 (1979). The key question becomes, therefore, whether Mr. Conaway made a prima facie case for age discrimination. We hold that he did not.

This Court has not spoken on the requirements necessary to make a prima facie case for age discrimination in employment. Other courts that have examined the issue agree that age discrimination is wrong, but disagree on how to prove it. Nevertheless, most courts have looked to *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) (a race discrimination case) for authority. *See Annot.*, 58 A.L.R.Fed. 94, 99 (1982). In *McDonnell Douglas* the Supreme Court noted that the elements necessary to make a prima facie case will vary according to the circumstances of each case. 411 U.S. at 802 n. 13, 93 S.Ct. at 1824 n. 13. The Court also gave an example, saying that one way to make a prima facie case of race discrimination is for the plaintiff to show: (1) that he belongs to a racial minority; (2) that he applied and was qualified for a job for which the employer was seeking applicants; (3) that he was rejected; and (4) that after his rejection the employer continued to seek applicants from persons with the plaintiff's qualifications. 411 U.S. at 802, 93 S.Ct. at 1824.

This example is known as the *"McDonnell Douglas* test." It is a fairly workable test for certain kinds of discrimination in hiring practices, but does not adapt well to the other areas of employment discrimination. Unfortunately, many courts have attempted to adapt the *McDonnell Douglas* test to situations unforeseen by its drafters.

Both parties in this case offer cases which use an altered *McDonnell Douglas* test for discrimination. Mr. Conaway points the Court to *Loeb v. Textron, Inc.*, 600 F.2d 1003 (1st Cir.1979). In the *Loeb* case the court first examined the *McDonnell Douglas* test and then attempted to adapt that test to a case of wrongful discharge due to age discrimination:

> To apply the above concept in the present case, which involves firing, not hiring, the critical elements (beyond being within the protected class, *i.e.*, age 40–65, and fired) must be modified to produce an analogous inference. Complainant would be required to show that he was "qualified" in the sense that he was doing his job well enough to rule out the possibility that he was fired for inadequate job performance, absolute or relative. *See Teamsters*, 431 U.S. [324] at 358 n. 44, 97 S.Ct. 1843 [1866 n. 44, 52 L.Ed.2d 396]. He would also have to show that his employer sought a replacement with qualifications similar to his own, thus demonstrating a continued need for the same services and skills.

600 F.2d at 1013 (footnotes omitted).

The *Loeb* test, set out above, works out to a four factor test: (1) that the plaintiff was a member of the protected class; (2) that he was fired; (3) that he was doing his job well enough to rule out inadequate job performance as a reason for discharge; and (4) that a replacement was sought.

The test places a heavy burden on the plaintiff. He must prove that he was doing his job well enough to "rule out the possibility that he was fired for inadequate job performance." All humans make mistakes. Very few employees can point to such a perfect record that it would "rule out the possibility" of being discharged for an inadequate performance.[2] Everyone has some black marks on the record. Further,

---

2. Certainly Mr. Conaway would not fall into this category.

it is the burden of the employer to show a nondiscriminatory reason for discharge, not the burden of the employee to prove that there was no legitimate reason for the discharge. *See McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824.

Eastern instead points this Court to *Houser v. Sears Roebuck & Co.*, 627 F.2d 756, 757 (4th Cir.1980). *Houser* requires that the plaintiff, in order to make a prima facie case, show that: (1) he was a member of a protected class; (2) he was discharged; (3) he was qualified to do his job;[3] and (4) he was actually replaced by one outside of the protected group. *See* 627 F.2d at 757. We also have trouble with this test. In a situation such as Mr. Conaway's where there are many employees performing essentially the same task, it is impossible to point to one person who replaced Mr. Conaway. Therefore, a plaintiff could almost never make a prima facie case of discrimination in such a situation.

The problem with both approaches is that they are trying to stretch the *McDonnell Douglas* case much farther than it was ever intended to go. The result is tests which are too narrow. The *McDonnell Douglas* test was never intended by the Supreme Court to be a panacea to correct all discrimination wrongs.[4] In *State ex rel. State of W.Va. Human Rights Comm'n v. Logan-Mingo Area Mental Health Agency*, 174 W.Va. 711, 329 S.E.2d 77, 83 (1985), we examined the *McDonnell Douglas* test and several cases interpreting it, and determined that in discriminatory discharge cases the *McDonnell Douglas* formulation must be changed. In *Mental Health Agency*, however, we stopped short of proposing a general test and instead set out a test for certain disparate treatment cases. *See* 174 W.Va. at 719, 329 S.E.2d at 85.

Courts need a general test for determining whether the plaintiff has made a prima facie case. At present, if the plaintiff meets one of the narrow tests then he has made a prima facie case, but if the plaintiff fails to meet one of the narrow tests, he may still have a case. There is no way for the court to make an intelligent ruling for or against the plaintiff on a motion for summary judgment, because there are no set factors which a plaintiff must prove, only scattered sets of factors which he may prove.

■ We, therefore, now propose a general test for determining whether the plaintiff has made a prima facie case of impermissible employment discrimination. In order to make a prima facie case of employment discrimination, the plaintiff must prove that:

(1) That the plaintiff is a member of a protected class.

(2) That the employer made an adverse decision concerning the plaintiff.

(3) But for the plaintiff's protected status, the adverse decision would not have been made.[5]

■ The first two parts of the test are easy, but the third will cause controversy. Because discrimination is essentially an element of the mind, there will probably be very little direct proof available. Direct proof, however, is not required. What is required of the plaintiff is to show some evidence which would sufficiently link the employer's decision and the plaintiff's status as a member of a protected class so as to give rise to an inference that the employ-

---

**3.** We assume that the term "qualified" would have the same meaning as in *Loeb, supra*.

**4.** The Supreme Court noted in a later decision that the *McDonnell Douglas* decision "did not purport to create an inflexible formulation" for a prima facie case of discrimination. *Int'l Brotherhood of Teamsters v. United States*, 431 U.S. 324, 358, 97 S.Ct. 1843, 1866, 52 L.Ed.2d 396 (1977).

**5.** This test is no great feat of judicial construction, but merely is proof that it takes a court three sentences to say what the layman could say as well in one. A layman would say: "I was _____ (fired, demoted, etc.) because I was _____ (too old, black, a woman, etc.)." If the plaintiff can offer proof of this one sentence, he has a prima facie case, otherwise no.

Further, this test is not new material. The first two elements are inherent in every test so far devised. The third element, the "but for" causation, has been accepted by the United States Supreme Court in *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 282 n. 10, 96 S.Ct. 2574, 2580 n. 10, 49 L.Ed.2d 493 (1976).

ment decision was based on an illegal discriminatory criterion.[6] This evidence could, for example, come in the form of an admission by the employer,[7] a case of unequal or disparate treatment between members of the protected class and others [8] by the elimination of the apparent legitimate reasons for the decision,[9] or statistics in a large operation which show that members of the protected class received substantially worse treatment than others.[10]

■■■■ Once the plaintiff has met this burden, the burden would shift to the employer to show some nondiscriminatory reason for the decision. The reason need not be a particularly good one.[11] It need not be one which the judge or jury would have acted upon. The reason can be any other reason except that the plaintiff was a member of a protected class.[12] If the fact finder believes that the proffered reason was the true reason for the decision, then the employer, while he may be guilty of poor

business practices, is not guilty of discrimination. Essentially, this operates as an affirmative defense. Therefore, it would be covered under Rule 8(c) of the Rules of Civil Procedure.[13]

■■■ Of course, after the employer has set out his reason for the decision, the employee will have the chance to rebut the employer's evidence with a showing that the stated reason was merely a pretext for discriminatory motive.[14]

Note that this test does *not* overrule or modify our previous tests in *Shepherdstown VFD*[15] or *Mental Health Agency*.[16] Rather, this test is inclusive of those. Both of these tests have the same factors as the general test, but state them in a more useful, fact specific manner. These tests are more workable and helpful than is the general test, and therefore the specific tests should be used where they apply,

**6.** *See Int'l Brotherhood of Teamsters v. United States,* 431 U.S. 324, 358, 97 S.Ct. 1843, 1866, 52 L.Ed.2d 396 (1977).

**7.** *See, e.g., Loeb v. Textron, Inc.,* 600 F.2d 1003, 1014 n. 12 (1st Cir.1979).

**8.** *See, e.g., State ex rel. State of W.Va. Human Rights Comm'n v. Logan-Mingo Area Mental Health Agency,* 174 W.Va. 711, 329 S.E.2d 77 (1985).

**9.** *See Int'l Brotherhood of Teamsters v. United States,* 431 U.S. 324, 358 n. 44, 97 S.Ct. 1843, 1866 n. 44, 52 L.Ed.2d 396 (1977); *Loeb v. Textron,* 600 F.2d 1003, 1013–14 (1st Cir.1979).

**10.** *See, e.g., Dothard v. Rawlinson,* 433 U.S. 321, 97 S.Ct. 2720, 53 L.Ed.2d 786 (1977).

**11.** An absurd reason, however, would surely be very difficult for the fact finder to believe. Also, if the stated reason violates a substantial public policy, then, while it will exonerate the employer on discrimination, it will assure an adverse judgment on wrongful discharge. *See* Syllabus, *Harless v. First Nat'l Bank,* 162 W.Va. 116, 246 S.E.2d 270 (1978).

**12.** *See County of Washington v. Gunther,* 452 U.S. 161, 169–70, 101 S.Ct. 2242, 2247–48, 68 L.Ed.2d 751 (1981) ("any other factor other than sex" an affirmative defense in sex discrimination case).

**13.** *See generally* Belton, *Burdens of Pleading and Proof in Discrimination Cases: Toward a Theory of Procedural Justice,* 34 Vand.L.Rev. 1205, 1257–58 (1981). Rule 8(c) of the Rules of Civil

Procedure governs affirmative defenses. We include this defense under 8(c) to make clear the rules concerning the burdens of pleading and proof in asserting this defense.

**14.** *See* syl. pt. 3, *Shepherdstown VFD v. W.Va. Human Rights Comm'n,* 172 W.Va. 627, 309 S.E.2d 342 (1983).

**15.** *Id.* The *Shepherdstown VFD* test is a restatement of the *McDonnell Douglas* test. It applies well to certain cases of unequal treatment in hiring situations.

**16.** *State ex rel. State of W.Va. Human Rights Comm'n v. Logan-Mingo Area Mental Health Agency,* 174 W.Va. 711, 329 S.E.2d 77 (1985). In syllabus point 2 the Court sets out a test as follows:

A complainant in a disparate treatment, discriminatory discharge case brought under the West Virginia Human Rights Act, *Code,* 5–11–1, *et seq.,* may meet the initial *prima facie* burden by proving, by a preponderance of the evidence, (1) that the complainant is a member of a group protected by the Act; (2) that the complainant was discharged, or forced to resign, from employment; and (3) that a nonmember of the protected group was not disciplined, or was disciplined less severely, than the complainant, though both engaged in similar conduct.

This is a very useful, workable test for unequal treatment of employees, but it is limited by the relatively narrow fact situation to which it applies.

instead of the general test. However, the specific tests were crafted for certain fact situations, and they should not be extended further than they can comfortably reach.

■ Turning to the case at hand, we find that Mr. Conaway was a member of a protected class and an adverse decision was made by his employer concerning him. Mr. Conaway fails, however, to show any nexus between the employer's decision and a discriminatory reason. No admission was made, no unequal treatment was alleged, and the statistics presented with the record showed, if anything, that the older employees were treated slightly better than the younger ones. Because he fails to show some nexus which links his discharge to his age, we hold that the trial court was correct in summarily dismissing his age discrimination claim.

■ This was not age discrimination or wrongful discharge. This was a case of a marginal employee being dismissed because of one too many violations. Because all four of Mr. Conaway's causes of action fail, the summary judgment in favor of Eastern is affirmed.[17]

Affirmed.

McGRAW, Chief Justice, dissenting:

Motions for summary judgment are viewed with caution in this state, *Price v. Bennett*, 171 W.Va. 12, 297 S.E.2d 211 (1982), and granting summary judgment is seldom appropriate in complex cases or in cases where issues involving motive and intent are present, *Karnell v. Nutting*, 166 W.Va. 269, 273 S.E.2d 93 (1980). Any doubts as to the existence of a genuine issue of fact must be resolved against the party moving for summary judgment, *Aetna Casualty and Surety Co. v. Federal Insurance Co.*, 148 W.Va. 160, 133 S.E.2d 770 (1963). If varying inferences may be drawn from the nonmovant's evidence, when accepted as true, the motion for summary judgment must be denied. *Id.* Even if the trial judge feels that a directed verdict will be granted at trial, he should not try the case in advance on a motion for summary judgment. Syl. Pt. 1, *Masinter v. Webco Co.*, 164 W.Va. 241, 262 S.E.2d 433 (1980).

The trial judge prematurely disposed of the appellant's case at the summary judgment stage and this Court has compounded that injustice by articulating a stringent standard for establishing a prima facie case of employment discrimination. Not only does the majority's opinion confuse the standards for disparate treatment and disparate impact discrimination cases, it confuses the requirements for setting out a prima facie case with the plaintiff's ultimate burden of proof. The "but for" formulation is useful only in determining whether the plaintiff has proven his case by a preponderance of the evidence, considering not only his prima facie case, but also the employer's showing of some nondiscriminatory reason for the adverse decision and any rebuttal showing by the plaintiff that the reason advanced by the employer is mere pretext. *See McDonald v. Santa Fe Trail Transportation Co.*, 427 U.S. 273, 282 n. 10, 96 S.Ct. 2574, 2580 n. 10, 49 L.Ed.2d 493 (1976); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804, 93 S.Ct. 1817, 1825, 36 L.Ed.2d 668 (1973); *Wilhelm v. Blue Bell, Inc.*, 773 F.2d 1429, 1432 (4th Cir.1985).

The majority explains its "but for" requirement, saying that "the plaintiff is to show some evidence . . . so as to give rise to an inference" of discrimination or that he must show a "nexus between the employer's decision and a discriminatory reason." Neither of these statements articulates a traditional application of the "but for" rule (normally used in determining proximate cause in tort cases), which is that "[t]he defendant's conduct is a cause of the event if the event would not have occurred but for that conduct; or, conversely, the defendant's conduct is not a cause of the event, if the event would have

---

17. Mr. Conaway also challenges the amount of the award assessed against him for costs. Unfortunately, he did not make this objection in a timely manner as provided for by W.Va.R.Civ.P. 54(d) and therefore waived any objection.

occurred without it." *Rudeck v. Wright,* 218 Mont. 41, 709 P.2d 621 (1985).

In its rush to adopt a general test for determining whether a plaintiff has made out a prima facie case of employment discrimination, the majority has further confused an already murky area of the law and, if the "but for" test is applied in a traditional fashion, has made the plaintiff's task more difficult. I, therefore, must respectfully dissent.