# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**CARL CLARK,**
**Plaintiff Below, Petitioner**

**FILED**

**May 9, 2018**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs.) No. 17-0616 (Kanawha County No. 15-C-1470)**

**KANAWHA COUNTY BOARD OF EDUCATION,**
**Defendant Below, Respondent**

## MEMORANDUM DECISION

The petitioner herein and plaintiff below, Carl Clark ("Coach Clark"), by counsel, Richard W. Walters and Todd A. Mount, appeals an order entered June 13, 2017, by the Circuit Court of Kanawha County. By that order, the circuit court granted judgment as a matter of law pursuant to Rule 50 of the West Virginia Rules of Civil Procedure to respondent herein and defendant below, Kanawha County Board of Education ("the Board"). The Board is represented by Charles R. Bailey, James W. Marshall, III, and Unaiza Riaz. On appeal to this Court, Coach Clark contends that he submitted ample evidence upon which a reasonable jury could conclude that the actions of the Board in posting a vacancy for the position of head coach of the Capital High School boys' basketball team and thereafter failing to re-hire Coach Clark were motivated by age discrimination.

Upon our thorough and considered review of the assignments of error, the parties' arguments, the appendix record, and the pertinent authorities, we find that the circuit court committed no error in the order dismissing the action against the Board. Consequently, we affirm the circuit court's June 13, 2017, order. Because this case does not present a new or substantial question of law, and for the reasons set forth herein, we find the issuance of a memorandum decision is appropriate pursuant to Rule 21(c) of the West Virginia Rules of Appellate Procedure.

Coach Clark was a respected athletic coach and certified teacher in the Kanawha County public school system. He began his career as a teacher and coach employed by the Board in 1971. By 1977, Coach Clark was teaching and successfully coaching girls' and boys' basketball at Stonewall Jackson High School. In 1989, he began teaching and coaching at newly consolidated Capital High School (Capital High). Initially, he was the assistant boys' basketball coach and the head coach for the girl's basketball team. Ultimately, Coach Clark became head coach for the Capital High boys' basketball team; a position he filled for some twenty-one years. During that period, the team won state titles

as well as numerous regional and sectional championships. Coach Clark also won numerous awards for his coaching achievements.

In 2014, recognizing the toll that the dual positions of teaching and coaching had taken on his family, Coach Clark, wanting to spend more time with his family, made the decision to retire from teaching. He discussed his situation with then long-time Charleston High principal Clinton Giles and represented that he wanted to continue as head coach for the boys' basketball team. Principal Giles apparently agreed that Coach Clark could continue as head coach for the 2014-2015 season even if he retired as a teacher. This agreement was made despite a requirement that employed teachers have a right of first refusal to coaching positions.

Following Coach Clark's October 1, 2014, retirement from teaching, principal Giles did not declare the position of head coach for the boys' basketball team vacant and did not post the position for applicants. On November 7, 2014, Coach Clark signed an Extra-Curricular Assignment Agreement ("Agreement") with the Board to serve in the position at a rate of compensation of $2,500.00 for the 2014-2015 school year. The season was successful with nineteen wins and four losses, a sectional championship win, and a regional championship win. Additionally, Coach Clark was named Coach of the Year of the Mountain State Conference and by the Charleston Gazette-Mail newspaper.

In January 2015, in the middle of the basketball season, principal Giles unexpectedly resigned. David Miller became the acting principal. The basketball season ended on March 10, 2015, and Coach Clark received his compensation for the completion of his duties pursuant to the Agreement. Coach Clark informed both acting principal Miller and athletic director Cody Clay that he wanted to continue coaching and requested that any new principal be so informed.

Mr. Clay, having been hired as the athletic director in August 2014, was relatively new to the position of athletic director. Previously, Mr. Clay relied on principal Giles for decisions regarding the posting of, and hiring for, coaching positions. In the absence of principal Giles, in the spring of 2015, Mr. Clay contacted the Board's human resources department for guidance on posting and filling coaching positions for the 2015-2016 school year. Given the cumbersome, time-consuming requirements for posting, interviewing, recommending, and subsequent approval by the Board, Mr. Clay was preparing for the next athletic seasons. Mr. Clay was advised by human resources that any position not held by a full-time teacher had to be posted as available. After compiling a list of all coaching positions that needed to be posted, Mr. Clay again contacted the human resources office and confirmed that all coaching positions held by non-teachers in 2014-2015, including retired teachers, had to be posted as available. There were multiple coaches in the category of retired or non-teacher. Mr. Clay prepared the list of vacancies for posting and

it was submitted to human resources. The list included the boys' head basketball coach position and twelve other coaching positions at Capitol High.

From April 24, 2015, through April 30, 2015, the boys' head coach position, together with the twelve other coaching positions at Capital High, and nine other coaching positions in the county system, were posted on the Board's Job Vacancy Hotline. Upon posting the position, acting principal Miller and Mr. Clay telephoned Coach Clark to advise him that the position was posted and that he needed to submit an application for the position. Coach Clark immediately completed and submitted the online application on April 24, 2015.

In the meantime, during the last week of April, the Board hired Larry Bailey to serve as the principal at Capital High. Upon assuming his position, principal Bailey was confronted with the task of filling teaching, service personnel, and coaching vacancies. He learned that seven applicants had applied for the boys' basketball head coach position. Principal Bailey contacted his supervisor to obtain advice on how to proceed. He was told to interview all the applicants for the position. He selected a committee to sit in on the interviews and assist in the hiring decision. The committee consisted of Mr. Clay, assistant principal Matthew Shock, and assistant principal Abbey Stevens. The committee members were all under the age of forty.

The interviews were held during the week of May 18, 2015. Prior to the interviews, the committee was provided with only the names of the applicants. No other information was provided. Mr. Clay prepared a list of ten questions to ask each of the interviewees. The questions were prepared in advance of knowing who the applicants were and were based upon a general hypothetical applicant. The list was provided to each of the committee members. Each applicant was asked the ten questions during the course of the interview. There was no deviation and no follow-up questioning. The first question contained three parts. First, "[w]hat are your career goals as a basketball Coach?" Second, "[w]here do you see yourself in five years?" Third, "[w]hat kind of commitment can you give us if you were given this position?"

The committee was operating with the understanding and instruction that the position had to be offered to a currently employed certified professional educator if one applied for the position. Thus, an applicant such as Matthew Greene, a then-current teacher at Capitol High, had a right of first refusal for a coaching position. Mr. Greene came to the interview with a resume and prepared portfolio materials outlining his ideas for the program and was enthusiastic about the possibility of coaching. On the other hand, Coach Clark was terse and took the approach in the interview, without elaborating, that his record spoke for itself. Coach Clark felt "degraded" by the interview process. He did not believe he should have to "sell" himself. Coach Clark felt that the composition of the committee and the nature of the first questions meant that the process was "stacked against him."

Following the interviews, the committee agreed to offer the position to Mr. Greene as a currently employed certified teacher at Capital High. Had Mr. Greene refused the offer, the next in line for the position would have been Ron Beatty who was a long-term currently employed certified professional educator at another school in the county and who had served for years as an assistant coach of the Capital High boys' basketball team with Coach Clark. In the event that Mr. Beatty refused an offer, the committee may have wanted to offer the position to Pat McGinnis, a long-time teacher and coach who had impressed the committee, but who informed the committee that he was retired as a teacher. In any event, under the rules in place at the time, Coach Clark could not have been offered the position unless both Mr. Greene and Mr. Beatty first declined an offer.

On June 1, 2015, principal Bailey submitted a request to hire Capital High teacher Mr. Greene to be the head coach of the Capital High boys' basketball team. Mr. Greene was thirty-five-years-old. The request was formally approved by the Board at its scheduled meeting on June 8, 2015. The approval of the request was done by the Board at the same time it approved seven other coaching assignments for Capital High and thirty-two other coaching positions at high schools and middle schools throughout the county, including head and assistant girls' and boys' basketball coaching positions. Additionally, the record reflects that in April and May 2015, hundreds of coaching positions from around the county were posted. The record establishes that the newly hired coaches for the Capital High boys' basketball team for the 2015-2016 season were under the age of forty. The record is silent as to the ages for those individuals in other coaching positions at Capitol High and for those individuals who were part of the applicant pools.

On May 21, 2015, subsequent to interviewing for the coaching position, Coach Clark applied to become a substitute teacher. The record is undeveloped regarding whether the committee was informed of the substitute teaching application. The application was approved by the Board on June 8, 2015, in the same personnel agenda setting that approved Mr. Greene and forty others for coaching positions. Coach Clark has not filled a substitute teaching position. At some point, when no employed teacher applied for the position, principal Bailey called Coach Clark and offered him the position of assistant basketball coach of the boys' team. Coach Clark had applied online for the assistant coach position at the same time he applied for the head coach position. Coach Clark refused the position as he found the offer insulting and states that he mistakenly applied for the position.

Coach Clark filed his three count complaint grounded in age discrimination and in intentional and negligent infliction of emotional distress on August 3, 2015. Thereafter, Coach Clark withdrew the claims of intentional and negligent infliction of emotional distress as well as his claims for past and future lost wages and his request for punitive damages. On November 14, 2016, a jury trial commenced on the remaining issues of whether the Board engaged in age discrimination in violation of the West Virginia Human Rights Act ("Human

4

Rights Act"), W. Va. Code § 5-11-1, *et seq*. (1967) (Repl. Vol. 2013), and whether Coach Clark was entitled to an award of emotional distress damages as a result. Coach Clark testified and presented the testimony of principal Bailey, former assistant principal and member of the interview committee, Matthew Shock, and the former athletic director, Mr. Clay. A number of exhibits and stipulations were admitted in evidence. Thereafter, argument was had on the motion of the Board for judgment as a matter of law pursuant to Rule 50 of the West Virginia Rules of Civil Procedure. Based upon a review of the evidence including the testimony, exhibits, and stipulations, the circuit court concluded that there was no legally sufficient evidentiary basis for a reasonable jury to find that the Board discriminated against Coach Clark on the basis of his age. Accordingly, on June 13, 2017, the circuit court entered an order granting the Board's motion and dismissed the matter from the court's docket. Coach Clark filed and perfected his appeal from that order.

This Court applies a *de novo* standard of review to the grant or denial of a motion for judgment as a matter of law.

> The appellate standard of review for the granting of a motion for a [judgment as a matter of law] pursuant to Rule 50 of the West Virginia Rules of Civil Procedure is de novo. On appeal, this court, after considering the evidence in the light most favorable to the nonmovant party, will sustain the granting of a [judgment as a matter of law] when only one reasonable conclusion as to the verdict can be reached. But if reasonable minds could differ as to the importance and sufficiency of the evidence, a circuit court's ruling granting a [judgment as a matter of law] will be reversed.

Syl. pt. 3, *Brannon v. Riffle* 197 W. Va. 97, 475 S.E.2d 97 (1996).

Under the Human Rights Act, it is unlawful "[f]or any employer to discriminate against an individual with respect to compensation, hire, tenure, terms, conditions or privileges of employment. . . ." W. Va. Code § 5-11-9(1) (1998) (Repl. Vol. 2013). Discrimination, under the terms of the Human Rights Act "means to exclude from, or fail or refuse to extend to, a person equal opportunities because of. . ." among other things, "age." W. Va. Code § 5-11-3(h) (1998) (Repl. Vol. 2013). The term "age" is defined as meaning "the age of forty or above[.]" W. Va. Code § 5-11-3(k) (1998) (Repl. Vol. 2013).

Coach Clark's complaint is predicated upon a claim of disparate treatment meaning that he alleges that the Board discriminated against him on the basis of age. This allegation is distinct from one sounding in disparate impact, which is used to attack facially neutral policies that disproportionately impact a protected group. "[A] complainant asserting

a disparate treatment theory must prove discriminatory intent to prevail, while a complainant asserting a disparate impact theory need not offer any such proof." *Morris Mem'l. Convalescent Nursing Home, Inc. v. West Virginia Human Rights Comm'n*, 189 W. Va. 314, 317, 431 S.E.2d 353, 356 (1993)(describing differences between disparate impact and disparate treatment claims of unlawful discrimination). Coach Clark alleged, and must prove, that the Board intentionally discriminated against him due to his age.

This Court has long held that cases brought under the Human Rights Act are governed by the same evidentiary framework developed under Title VII and enunciated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). As was discussed in *Barefoot v. Sundale Nursing Home*, 193 W. Va. 475, 457 S.E.2d 152 (1995), pursuant to the *McDonnell Douglas* framework, a plaintiff must first create an inference of discrimination by establishing a *prima facie* case. *Barefoot*, 193 W. Va. at 483, 457 S.E.2d at 160. Thereafter, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the negative action taken. *Id.* Lastly, the plaintiff has an opportunity to show that the articulated rationale of the defendant was merely a pretext for discrimination. *Id*.

In *Conway v. Eastern Associated Coal Corp*., 178 W. Va. 164, 358 S.E.2d 423 (1986) we addressed what is required of a plaintiff to establish a *prima facie* case of age discrimination. Specifically, this Court held:

> In order to make a prima facie case of employment discrimination under the West Virginia Human Rights Act, W. Va. Code § 5-11-1 *et seq*. (1979), the plaintiff must offer proof of the following:
>
> (1) That the plaintiff is a member of a protected class.
>
> (2) That the employer made an adverse decision concerning the plaintiff.
>
> (3) But for the plaintiff's protected status, the adverse decision would not have been made.

Syl. pt. 3, *Conway,* 178 W. Va 164, 358 S.E.2d 423.

As to the third prong of proof, we have made it abundantly clear that the "but for" element requires only that a plaintiff show an inference of discrimination. *Barefoot*, 193 W. Va. at 484, 457 S.E.2d at 161. This Court has discussed the third prong of proof:

6

> Because discrimination is essentially an element of the mind, there will probably be very little direct proof available. Direct proof, however, is not required. What is required of the plaintiff is to show some evidence which would sufficiently link the employer's decision and the plaintiff's status as a member of the protected class so as to give rise to an inference that the employment decision was based on an illegal discriminatory criterion. This evidence could, for example, come in the form of . . . a case of unequal or disparate treatment between members of the protected class and others[.]

*Conway*, 178 W. Va. at 170-71, 358 S.E.2d at 429-30. With this paradigm of proof in mind, we turn to an analysis of the evidence presented and the circuit court's entry of judgment as a matter of law.[1]

At the time the vacancy was posted and interviewing undertaken, Coach Clark, at the age of sixty-eight, was a member of a protected class. The Board, at the posting stage and/or with the decision to hire a thirty-five-year-old individual, made an adverse decision concerning Coach Clark. Coach Clark argues he offered evidence that he was a successful coach who provided good and loyal service and nevertheless a decision was made to declare a vacancy and ultimately replace him with someone not in his protected class.

The Board contends that Coach Clark voluntarily, of his own accord, retired from his teaching position in October 2014. Principal Giles apparently made a decision not

---

[1]We note that the facts of this case demonstrate some of the analytical challenges of the proof scheme and the shifting of the burden of presumption in discrimination cases. While the Board's motion was made at the conclusion of Coach Clark's case-in-chief, Coach Clark called Board witnesses to establish proof of age discrimination. The Board elected to develop its case when examining those witnesses during Coach Clark's case-in-chief. The Board also reserved the right to call those same witnesses in the presentation of its case. Some of the evidence could be analyzed in terms of the *prima facie* case or as pretext. The characterization of the assessment of the evidence does not particularly matter. What matters is whether Coach Clark sustained his burden of proving that age entered into the decision to declare a vacancy, interview, and hire for the coaching position. As former Justice Cleckley correctly observed, if a *prima facie* case is established such that a presumption of discrimination was created, the case, as a matter of law, could not be dismissed at the conclusion of his case-in-chief. *Barefoot*, 193 W. Va. at 485-86, 457 S.E.2d at 162-63.

to post the head coach position; choosing instead to have Coach Clark continue with coaching for the 2014-2015 season, which ended in early March 2015. However, Principal Giles' sudden resignation left a newly-appointed interim principal and a new athletic director to address all coaching positions for Capital High for the next school year. They properly sought guidance from the Board's human resources department and followed the direction that such positions filled by retired teachers must be posted because the law at the time dictated that county boards of education give priority for coaching positions to currently employed certified professional educators. As a result, Capital High posted thirteen coaching positions including the boys' basketball head coach position that had been held by Coach Clark some twenty-one years. Those positions were posted by the Board as vacant together with other coaching positions in the county. The position and the hiring process was treated in the same manner as other positions. The position was offered and accepted by an eligible applicant who was employed by the board as a teacher and, as such, had a right of first refusal.

The question that must be analyzed is whether Coach Clark has shown evidence that "sufficiently links" the Board's actions with his status as a member of a protected class due to his age so as to give rise to an inference of illegal discrimination. Coach Clark argues that he showed that the interview panel consisted of individuals under the age of forty, that some of the interview questions as applied to him suggested ageism, and that he was replaced by a thirty-five-year-old individual. He also contends that his contract was not actually concluded until the end of the school year on June 30, 2015, and duties remained to be performed such that the position was improperly declared vacant and posted as part of a manipulative age-related scheme designed and advanced by Mr. Clay. It is argued that Mr. Clay was the architect of a scheme to get rid of the older Coach Clark in favor of a younger individual who would take the boys' basketball team in a new and different direction.

Coach Clark asks too much of the evidence. A whole record review undertaken in a light most favorable to Coach Clark instructs that only unsupported assumptions and speculation have been advanced in an effort to create an inference of age discrimination. Coach Clark is correct that he is not required to elicit a blatant confession of discrimination. This Court recognizes that it is the nature of discrimination that "smoking gun" evidence of unlawful motive is rarely available. However, there must be some evidence of discriminatory intent which could come in a variety of forms such as looking to comparison employees, showing evidence of those in the protected class being treated differently, or statistical analysis.

The record reflects that Coach Clark's independent, October 2014, voluntary decision to retire as a teacher set in motion the events leading to the head coaching position being posted as a vacancy. We note that the record also establishes that, had Coach Clark

8

not retired, he would have continued in the position absent some serious misconduct on his part. Coach Clark argues that the extra-curricular Agreement remained in force until the end of the school calendar year on June 30, 2015, such that the position should not have been posted as vacant in April 2015. According to Coach Clark, he had always performed coaching activities during a permissible three week period in June, outside the basketball season, and intended to do so again despite having already received payment.

The Agreement at issue is a form extra-curricular agreement that indicates that the extra-curricular duties required by the Agreement were subordinate to instructional duties required by the employee's employment contract. It further indicated that the extra-curricular duties may require modification in order to avoid interference with instructional duties. The Agreement provided that it was for the 2014-2015 "school year." The Agreement also explicitly provided that "[p]ayment of the compensation set forth above shall be made upon completion of the duties of the extra-curricular assignment or upon such other schedule mutually agreed upon by the parties." There is no dispute that Coach Clark was paid the compensation amount of $2,500.00 at the conclusion of the boys' basketball season in March 2015. That was the conclusion of the duties of the head coach for the 2014-2015 season. Additionally, the employee extra-curricular Agreement stated that "[e]mployee retirement, resignation, or termination ends this contract agreement." Considered with the fact that this was an extra-curricular assignment for Board employees and, due to his voluntary retirement, Coach Clark had no instructional duties, acting principal Miller and Mr. Clay had every reason to understand that Coach Clark's position for the extra-curricular coaching ended at the conclusion of the boys' basketball season and to proceed with posting it in the same fashion as other positions at Capital High and other schools within the Board system.

Furthermore, the record reflects that Coach Clark made several significant admissions in response to requests for admission from the Board. These admissions include that he was not a full-time educator when he applied for, and when he interviewed for, the head coach position in April and May of 2015. Coach Clark also admitted that he was not employed in any capacity by the Board when he applied for, and interviewed for, the head coach position in April and May 2015. It is noteworthy that on his substitute application of May 21, 2015, Coach Clark indicated that he was not "currently under contract."

It is clear to this Court that, once Coach Clark was paid, he was no longer employed by the Board in any capacity, either as a teacher or as an extra-curricular coach. In April 2015, it was entirely reasonable for Mr. Clay and acting principal Miller to proceed with posting the position together with twelve other coaching positions as guidance from human resources directed and as was done with hundreds of positions around the county. There is no evidence of unequal treatment or unlawful age discrimination entering the decision to post the position.

9

The law in place at the time of Coach Clark's retirement and the conclusion of the boys' basketball season provided that persons could serve in the public schools as athletic coaches subject to the limitation that a "currently employed certified professional educator has not applied for the position." W. Va. Code § 18A-3-2a(e)(3)(B) (2012) (Repl. Vol. 2012). Additionally, the West Virginia Code of State Regulations in place at the time provided that a certified coach may be contracted by a county school board "only if an employed certified professional educator within the county has not applied for and accepted the coaching position." 127 CSR § 3-6.1 & 6.4.c. Further, the West Virginia Secondary Sports Athletic Commission ("SSAC") Handbook incorporated the requirement of a preference for an employed certified professional educator to hold coaching positions. *See also Hanlon v. Logan Cty. Bd. of Educ.*, 201 W. Va. 305, 496 S.E.2d 447 (1997) (indicating that, in some circumstances, a board of education's authority to hire an individual as a coach is restricted by then W. Va. Code § 18A-3-2 when a currently employed professional educator has applied for the position).

Coach Clark conceded that he was aware of the various requirements governing coaching positions. Having worked with them for years, Coach Clark knew the SSAC rules. He was well-aware that for years the assistant positions for the boys' basketball team were posted at the end of the season due to the status of the individuals as non-faculty members. Nevertheless, he argues that, despite his retirement as an educator, he had an expectation of a continuing extra-curricular contract based, in part, on the fact that former principal Giles permitted him to continue coaching during the 2014-2015 season. Coach Clark "felt" that he would be able to continue as head coach without posting the position for as long as he wanted to remain. Notably, principal Giles did not testify. Coach Clark's reliance on any representations made by principal Giles, which appear to have constituted a bending of the rules, was misplaced.

During its session of 2015, the Legislature removed the requirement in W. Va. Code § 18A-3-2a(e)(3)(B) that employed certified professional educators be given the right of first refusal on all coaching positions as effective June 12, 2015. W. Va. Code § 18A-3-2a(e) (2015) (Repl. Vol. 2016). Coach Clark points to this change to argue that the Board could have waited until the law changed to post his position or make the hiring decision. Had this been done, the preference for currently employed teachers would not have been in place. Coach Clark contends that there was no prohibition precluding the Board from either waiting to fill the position after the rule preference change on June 12, 2015, or conditioning his re-hiring upon him once again becoming employed as a certified teacher which was accomplished on June 8, 2015, when he was approved as a substitute. Coach Clark also complains that he was not given advance notice that the position was going to be declared vacant and posted. Additionally, he complains he was not told that he could avail himself of the preferential hiring rule by becoming re-hired. It is argued that these matters constitute proof of Mr. Clay's discriminatory manipulative scheme.

The argument is purely speculative. Further, the argument amounts to a request to treat Coach Clark differently from others in the county system. The process of determining what coaching positions needed to be posted began weeks after the conclusion of the basketball season. In an unsettled administrative environment, administrators were attempting to put the school in proper position for the next athletic seasons with the knowledge of the importance of the three week period in June when coaches can work with potential athletes. Every Capital High position was treated exactly the same. Indeed, the record instructs that extra-curricular positions throughout the county were treated in the same manner. We observe that discrepancies in the testimony of principal Bailey and Mr. Clay were minor, explained, and of no moment in the effort to establish intentional discrimination. As to the hiring of Mr. Greene, the record reflects that Mr. Clay was unaware of any interest by Mr. Greene in the position until after it was posted.

There is simply nothing in the record to suggest a prohibited age bias in the actions of the Board. Coach Clark has failed in showing evidence that would "sufficiently link the [Board's] decision and [his] status as a member of the protected class so as to give rise to an inference that the employment decision was based on an illegal discriminatory criterion." *Conway*, 178 W. Va. at 170-71, 358 S.E.2d at 429-30. Coach Clark has not established a *prima facie* case of disparate treatment on the basis of age because he did not offer proof, either direct or circumstantial, that but for his protected status, the adverse actions of the Board would not have been made.

Accordingly, based upon the foregoing analysis, considering the evidence in a light most favorable to Coach Clark, we find that reasonable minds could not differ as to the importance and sufficiency of the evidence, and, therefore, sustain the June 13, 2017, order of the circuit court granting judgment to the Board as a matter of law.

Affirmed.

**ISSUED:** May 9, 2018

**CONCURRED IN BY:**

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Menis E. Ketchum
Justice Allen H. Loughry, II
Justice Elizabeth D. Walker