# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**FILED**
**November 1, 2023**

EDYTHE NASH GAISER, CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**CINDY LINGER-LONG,**
**Plaintiff Below, Petitioner**

**vs.) No. 22-ICA-203**          (Cir. Ct. Grant Cnty. No. CC-12-2020-C-20)

**ROBERT W. MILVET and**
**THE BOARD OF TRUSTEES OF GRANT**
**MEMORIAL HOSPITAL TRUST**
**FOUNDATION, INC. (otherwise**
**known as GRANT MEMORIAL HOSPITAL),**
**Defendants Below, Respondents**

## MEMORANDUM DECISION

Petitioner Cindy Linger-Long appeals the Circuit Court of Grant County's October 12, 2022, order granting summary judgment against her in her workplace discrimination/retaliatory discharge case against her former employer. Respondents Robert W. Milvet and The Board of Trustees of Grant Memorial Hospital Trust Foundation, Inc. ("GMH") timely filed a response.[1] Ms. Linger-Long filed a reply.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the lower tribunal's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Ms. Linger-Long began her employment at GMH on September 30, 2014. She was previously employed by the West Virginia Department of Health and Human Resources as an Economic Service Worker, where she was responsible for determining whether applicants qualified for certain benefits programs such as Medicaid, long-term care, and Supplemental Nutrition Assistance Program ("SNAP"). At GMH, she was an Enrollment Specialist and a Financial Counselor whose duties included gathering information from patients for billing purposes, completing transmission forms, notifying patients of

---

[1] Ms. Linger-Long is represented by Harley O. Staggers, Jr., Esq. Respondents are represented by C. David Morrison, Esq., and Michael J. Moore, Esq.

1

eligibility requirements, and completing Medicare and other forms for state financial reimbursement.

One of the forms patients at GMH are given prior to receiving medical services is the Advance Beneficiary Notice of Non-Coverage ("ABN") form. This form is a notice from a medical provider to a patient when, based on Medicare coverage rules, the medical provider has reason to believe that Medicare may not pay for the service. The notice advises the patient that if the charge is not covered by Medicare, the patient will be responsible for the payment. Per Medicare/Medicaid regulations, GMH can only bill a patient for the non-covered charges if the patient signed an ABN form acknowledging that the patient received advance notice that the charge might be their responsibility. Thus, if the ABN form is not signed, GMH may have to seek reimbursement from a state charity fund instead of the patient, or it may not receive reimbursement.

On or about May 17, 2019, GMH was informed by one of Ms. Linger-Long's co-workers that Ms. Linger-Long had been advising patients not to sign ABN forms so they could avoid personal responsibility for bills not covered by Medicare. Her direct supervisor received verbal and written statements from other co-workers corroborating similar claims, including emails indicating that Ms. Linger-Long had told many patients, including her own father, not to sign an ABN. Additionally, on May 19, 2019, Ms. Linger-Long's supervisor received a report that Ms. Linger-Long had asked a co-worker to reprocess a bill for her mother for her mother's financial benefit. GMH had already billed its services to Ms. Linger-Long's mother and the claim had been processed by Medicare and her mother's insurer. Ms. Linger-Long's mother had also received care from a physician and was responsible for paying the deductible amount for that care. Ms. Linger-Long allegedly wanted GMH and the doctor to reprocess their bills so that GMH's bill would be processed first and would be considered for the deductible amount, and then Ms. Linger-Long could ask that GMH write off the deductible amount as charity care.

GMH took the position that Ms. Linger-Long's actions in discouraging patients from signing ABN forms and her self-dealing on behalf of her mother at GMH's expense violated her duty of loyalty to her employer, were unethical, might constitute fraud, might violate state and federal regulations, and could subject GMH to liability. Consequently, GMH's CEO, Robert Milvet, decided to discharge her from her employment. Ms. Linger-Long was terminated on May 21, 2019. According to GMH, her replacement was a 58-year-old woman who was five years her senior and had similar qualifications as a Medicare Eligibility Specialist for the West Virginia Department of Health and Human Resources.

Ms. Linger-Long denied recommending that patients not sign ABN forms and denied making the request to get the bill for her mother's care reprocessed. She filed the underlying civil suit against respondents and alleged unlawful discrimination on the basis of her age and/or sex, and also that she was the victim of a retaliatory discharge due to a request for FMLA paperwork she made after her mother had a stroke on May 3, 2019.

A few days after her mother's stroke, on May 6, 2019, Ms. Linger-Long requested FMLA forms from the hospital's Human Resources Manager. That Manager sent her the requested paperwork, but Ms. Linger-Long did not return the completed forms to GMH and she never submitted a request for FMLA leave. She later admitted that she had asked for the forms "just in case" she needed them but did not know whether she would need to request any FMLA leave. As she did not request FMLA leave, GMH did not take any action regarding FMLA benefits. Moreover, Mr. Milvet testified that he did not know that Ms. Linger-Long had requested FMLA paperwork when he made the decision to terminate her for misconduct.

Ms. Linger-Long's Amended Complaint alleged two causes of action which are the subject of this appeal: Count I asserted age and/or gender discrimination in violation of The West Virginia Human Rights Act, West Virginia Code § 5-11-1, *et seq*.; and Count III alleged common law retaliatory discharge under *Harless v. First National Bank in Fairmont*, 162 W. Va. 116, 246 S.E.2d 270 (1978).[2] The circuit court granted GMH's motion for summary judgment and concluded that Ms. Linger-Long did not satisfy her burden of establishing a prima facie case of age discrimination, sex discrimination, or *Harless* (FMLA-based) retaliatory discharge, and it also concluded that she had not shown that GMH's articulated nondiscriminatory reasons to discharge her were pretextual. It is from that order that Ms. Linger-Long now appeals.

This Court accords a plenary review to the circuit court's order granting summary judgment: "[a] circuit court's entry of summary judgment is reviewed *de novo*." Syl. Pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994). In conducting our de novo review, we apply the same standard for granting summary judgment that is applied by the circuit court. Under that standard,

> [s]ummary judgment is appropriate where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove.

*Id*. at 190, 451 S.E.2d at 756, syl. pt. 4. We note that "[t]he circuit court's function at the summary judgment stage is not to weigh the evidence and determine the truth of the matter, but it is to determine whether there is a genuine issue for trial." *Id*. at 190, 451 S.E.2d at 756, syl. pt. 3. Finally, we recognize that "the party opposing summary judgment must satisfy the burden of proof by offering more than a mere 'scintilla of evidence' and must produce evidence sufficient for a reasonable jury to find in a nonmoving party's favor."

---

[2] The circuit court dismissed Count II of the Amended Complaint in an earlier order granting defendant's partial motion to dismiss and that order is not under appeal.

*Williams v. Precision Coil, Inc.*, 194 W. Va. 52, 60, 459 S.E.2d 329, 337 (1995) (citation omitted).

The Supreme Court of Appeals of West Virginia has held,

> "[i]n order to make a prima facie case of employment discrimination under the West Virginia Human Rights Act, W. Va. Code §5-11-1 *et seq.* (1979), the plaintiff must offer proof of the following: (1) That the plaintiff is a member of a protected class. (2) That the employer made an adverse decision concerning the plaintiff. (3) But for the plaintiff's protected status, the adverse decision would not have been made." Syllabus Point 3, *Conaway v. Eastern Associated Coal Corp.,* 178 W. Va. 164, 358 S.E.2d 423 (1986).

Syl. Pt. 1, *Knotts v. Grafton City Hosp.*, 237 W. Va. 169, 786 S.E.2d 188 (2016). Ms. Linger-Long's age and sex discrimination claims are disparate treatment claims in which she alleges she was intentionally discriminated against on the basis of her age and sex. "The burden of proof in a disparate-treatment . . . discrimination case is allocated between the parties according to the framework announced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)." *Knotts* at 175, 786 S.E.2d at 194. "Establishing a prima facie case raises only an inference of discrimination. The defendant can then offer legitimate nondiscriminatory explanations for the allegedly discriminating acts." *Henson v. Liggett Group, Inc.*, 61 F.3d 270, 274 (4th Cir. 1995) (citing *McDonnell Douglas,* 411 U.S. at 802). If a defendant makes this showing, the plaintiff is required to show that the legitimate, nondiscriminatory reason for her termination was pretextual. *See Conaway,* 178 W. Va. at 166, 358 S.E.2d at 425, syl. pt. 4.

On appeal, Ms. Linger-Long argues that the circuit court incorrectly allowed respondents to shift the burden to prove the third "but-for" prong of the prima facie case of employment discrimination described in syllabus point 4 of *Conaway*, and should have allowed the jury to resolve any factual disputes rather than granting summary judgment.

Upon review, we find no error in the circuit court's grant of summary judgment, and agree that Ms. Linger-Long failed to make a prima facie case of discrimination as required by syllabus point 4 of *Conaway*. In order to satisfy the third prong of the prima facie age discrimination test, a plaintiff may present evidence that a "substantially younger" employee who engaged in the same type of conduct for which the plaintiff faced an adverse employment decision, received more favorable treatment. Syl. Pt. 4, 5, in part, *Knotts,* 237 W. Va. at 169, 786 S.E.2d at 190. As the circuit court explained in its order granting summary judgment, Ms. Linger-Long not only "produced no evidence that suggests she was discriminated against on account of her age", the evidence adduced in the case actually "demonstrates that [she] was *not* discriminated against due to her age." Her replacement was five years her senior, not a "substantially younger" employee. At deposition, Ms. Linger-Long "could not cite to any example of any manager at GMH stating or doing

anything that indicated to [her] that any manager at GMH had a bias against older workers." In fact, she "offered no evidence that the adverse employment action taken against her was because of her age."

Similarly, the circuit court found that Ms. Linger-Long failed to meet her burden to establish a prima facie case of sex discrimination. To satisfy the third prong of that test, a female plaintiff may prove she was replaced by a male employee. *See Barefoot v. Sundale Nursing Home,* 193 W. Va. 475, 484-85, 457 S.E.2d 152, 161-62 (1995), *holding modified on other grounds* by *Dodrill v. Nationwide Mut. Ins. Co.,* 201 W. Va. 1, 491 S.E.2d 1 (1996). The circuit court found that Ms. Linger-Long offered no evidence that her sex had any effect on GMH's decision to discharge her employment. Her replacement was also female, and she admitted at deposition that an overwhelming majority of the workforce at GMH is female. Ms. Linger-Long did not claim she experienced a hostile work environment due to her sex or that her working conditions were objectionable. To the contrary, she testified that she loved her job.

Finally, we note that the circuit court correctly found that Ms. Linger-Long also failed to meet her burden to establish a prima facie case of retaliatory discharge under *Harless* in violation of the FMLA. Similar to the age and sex discrimination standards, "[a]n FMLA plaintiff claiming retaliation must first make a prima facie showing that he engaged in a protected activity, that the employer took adverse action against him, and that the adverse action was causally connected to the plaintiff's protected activity." *Vannoy v. Fed. Rsrv. Bank of Richmond*, 827 F.3d 296, 304 (4th Cir. 2016). If he "puts forth sufficient evidence to establish a prima facie case of retaliation" and the employer "offers a non-discriminatory explanation" for the termination, petitioner "bears the burden of establishing that the employer's proffered explanation is a pretext for FMLA retaliation." *Yashenko v. Harrah's N.C. Casino Co., LLC*, 446 F.3d 541, 551 (4th Cir. 2006) (internal quotations omitted). Here, the circuit court found that Ms. Linger-Long did not avail herself of any FMLA protection. She did not inform GMH of her intention to take leave because she never intended to take FMLA leave, rather she just requested FMLA paperwork in case she might need to take leave sometime in the future. FMH provided the necessary forms to her, but she did not fill them out or request FMLA leave. Moreover, GMH did not deny her any FMLA benefits.

Because Ms. Linger-Long failed to produce any evidence to support her claims, she failed to make a prima facie case for any of her discrimination or retaliation claims. Consequently, Ms. Linger-Long is not entitled to any inference of discrimination or retaliation that would shift the burden of proof to GMH. Nonetheless, GMH offered its explanation for the adverse employment decision and the circuit court determined that Ms. Linger-Long failed to establish that the explanation was a mere pretext for illegal discrimination or retaliation. The record establishes that GMH had a legitimate, non-discriminatory reason for terminating Ms. Linger-Long's employment, namely her

reported misconduct. Accordingly, we find that the circuit court did not err in awarding summary judgment to respondents.

Accordingly, we affirm the circuit court's October 12, 2022, order.

Affirmed.

**ISSUED:** November 1, 2023

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Charles O. Lorensen

**CONCURRING AND WRITING SEPARATELY:**

Judge Thomas E. Scarr

Scarr, Judge, concurring:

I concur in the majority's decision to affirm the October 12, 2022, circuit court order granting Respondents' motion for summary judgment. However, I write separately for the sole purpose of raising a concern regarding a certain aspect of the advocacy in this case.

There is no question that when a lawyer assumes representation of a client, they have a legal and ethical duty to zealously represent that client. In order to do so, a lawyer must have thorough knowledge and a mastery of the facts, evidence, and record to effectively represent their client's interests. Lawyers are certainly permitted and expected to structure, frame, and articulate the evidence in a manner that is most advantageous to their client's position. However, they must be conscientious to avoid, intentionally or unintentionally, misstating or misleading the court and others regarding the evidence. There is a difference, a line between advocacy and presenting evidence in a manner that supports the client's position and misrepresenting or mischaracterizing the evidence. Unfortunately, crossing this line is not as uncommon or isolated as it should be.

In this case, counsel for Petitioner indicated, without any citation to the record, that "Respondents admitted several times that [Petitioner] was too old," thereby "create[ing] an inference that age was a motivating factor in Respondent's decision to terminate [her employment]." This allegation was not made below. Counsel for Respondents called out this allegation and discredited it as "blatantly false."

6

The record in this case simply does not support the allegation of an express admission by the employer (let alone several admissions) that the Petitioner was terminated due to age. If anything, the record on appeal indicates that age was not a factor in the termination of her employment. If there were some reasonable explanation or defense for counsel's allegation, one would have expected to hear it once the allegation was challenged by opposing counsel. Certainly, a lack of citation to substantiate this claim could also be inferred as purposeful misrepresentation in an overzealous attempt to prevail.

Whether intentional or not, it is unacceptable for an attorney at any level of experience to mischaracterize the facts and evidence in a case. Further, the lack of accountability and failure to either explain or defend such alleged inaccuracy when raised, or to acknowledge the misstatement and mitigate such behavior when challenged by opposing counsel, is inexcusable. As judges, it is important that we acknowledge such behavior when observed. Such conduct not only impacts counsel's future credibility, but if we disregard or normalize such conduct and advocacy, and neglect our role in self-regulation of our profession, we all lose: the Bar, the court system, and the citizens of West Virginia.

Accordingly, having addressed this concern, I concur in the majority's analysis, reasoning, and decision to affirm the October 12, 2022, circuit court order granting Respondents' motion for summary judgment.